INZER, Justice.
This is an appeal by James T. O’Bannon from a decree of the Chancery Court of Oktibbeha County denying his petition for discharge from the Mississippi State Hospital at Whitfield. We affirm.
Appellant’s petition for discharge alleged four causes for release from the hospital. They are: (1) he is not insane, (2) he is harmless and may be cared for out of the hospital, (3) the hospital while alleging he is mentally ill failed to provide him with treatment for his illness calculated to cure him or improve his condition, and (4) he is being confined in an environment that is unduly restrictive and deprives him of his liberties without due process of law.
The record reflects that appellant was committed to the Mississippi State Hospital by an order of the Chancery Court of Okt-ibbeha County rendered on January 18, 1966. Prior to his commitment he had been examined by two physicians appointed for that purpose and by the psychiatric staff at the Mississippi State Hospital as was required by law. Appellant was found to be suffering from a mental disorder diagnosed as schizophrenia reaction, paranoid type. It was also found that he was in need of treatment, supervision and control and was likely to become dangerous if' left at large. After appellant’s commitment he was allowed to return home on trial visit on two occasions, but it was necessary for him to. be returned to the hospital because of his hostility toward his family. He has been continuously confined to the hospital for the past nine years. During this period he has been treated for his mental condition by medication. He was also given shock treatments, but these treatments failed to improve his condition.
He was at the time of the hearing and had been since January 1972 a patient of Dr. John M. Mayo, a psychiatrist on the staff at the Mississippi State Hospital. Dr. Mayo testified that appellant suffers from a mental disorder or malady known as paranoid schizophrenia, which he described as a very severe mental illness in which a person loses contact with reality *920 and develops delusions of persecution. It was Dr. Mayo’s opinion that appellant is potentially dangerous because he feels that people are against him and because appellant had recently struck another patient. It was the doctor’s opinion that the appellant should remain at the hospital for two reasons: (1) he is potentially dangerous and (2) he will not take his medication unless forced to do so and without taking medication he has practically no chance of improvement.
Dr. Donald C. Guild, director of Forensic Psychiatry at the hospital, testified that appellant had no insight to his mental illness, he is quick tempered, and he has made numerous threats that he would possibly act out if free from the hospital and thrust into an unrestrictive environment. It was his opinion that he could in certain circumstances be dangerous both to himself and other persons. He also testified that after this proceeding was filed, appellant was examined by the staff at the hospital to determine whether his petition for release from the hospital should be contested by the staff. It was the unanimous opinion of the staff that it should be for the reason that appellant had no insight as to his problem and would probably not take his medication unless forced to do so. He based this opinion on the fact that appellant believed the medicine was poisoning him and eating away his flesh.
Appellant testified on his own behalf and offered no other testimony. His testimony indicates that he is still suffering from a mental disorder.
The chancellor found from the evidence, that although the appellant had been in the hospital since December 1965, his condition had not appreciably improved. Each trial visit home was characterized by actual violence. It was the chancellor’s opinion from the testimony of the doctors and the testimony of appellant that appellant was likely to be dangerous if discharged from the hospital. It was also his opinion that appellant would not voluntarily take his medication and without continued and regular medication his condition would under no circumstances improve.
On appeal counsel for appellant urges that appellee failed to meet its burden of proof to show that appellant was in need of treatment, supervision or control or is likely to become dangerous if left at large. We find no merit in this contention. The evidence clearly established that appellant is suffering from a mental disorder known as paranoid schizophrenia and that he is in need of treatment, supervision and control. Further that he has no insight into his mental illness and will not take his medication unless forced to do so. Without medication he has virtually no chance of improving. It is true that the doctors could not predict with any degree of accuracy that if released appellant would commit violence to himself or someone else but it is clear from their testimony that appellant is likely to be dangerous if released from the hospital.
Counsel for appellant next urges that appellant should be released because he is not receiving minimally adequate psychiatric care and treatment to cure or improve his condition. The basis of this argument seems to be that Dr. Mayo testified that he had no formal written plan for the treatment and cure of appellant. However, it is clear from his testimony that he is treating appellant as an individual and that he does have a plan for his treatment and hopefully for his cure.
Dr. Guild testified that he could discern a plan from the medical records of the appellant. While a formal written plan for each patient is desirable, it is not essential so long as there is an adequate plan for his or her treatment and hopefully for their cure. Appellant urges that we should order his release unless we order appellee to *921 provide proper treatment. Appellant does not point out wherein he is not receiving proper treatment, except that there is no written plan. After a review of the evidence, we cannot say that the chancellor was wrong, much less manifestly wrong in finding that appellant was receiving adequate treatment.
Finally, appellant urges that he should be released because appellee has failed to explore and implement alternatives less restrictive than in-patient institutional care. We find no merit in this contention. The testimony showed that neither appellant nor any member of his family have requested that he be released on furlough or trial basis. The testimony shows that appellant is allowed to come to Jackson for a day at any time except on the days when he receives counseling or is required to attend group therapy. If appellant was harmless and could be cared for out of the hospital, it would be the duty of the director of the hospital to release him. Section 41-21-41, Mississippi Code 1972 Annotated. However, such is not the case. He requires supervision because he is potentially dangerous and because he cannot be trusted to voluntarily take his medication and without medication there is little or no hope for his improvement or cure.
After a careful review of the record in this case we are of the opinion that this case should be and it is affirmed.
Affirmed.
GILLESPIE, C. J., and PATTERSON, SMITH, ROBERTSON, and BROOM, JJ-, concur.
SUGG, J., took no part.